IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARIA YAWS                                    Case No. 3:12-cv-02063-MA

          Plaintiff,                      OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

TIM WILBORN
P.O. Box 370578
Las Vegas, NV 89137

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

CHRISTOPHER J. BRACKETT
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Maria Yaws seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I reverse the final decision of the Commissioner, and remand this action for further administrative proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on October 9, 2008, alleging disability beginning December 20, 2006 due to severe edema, morbid obesity, severe allergies, pulmonary problems, severe asthma, back pain, and sleep apena. Tr. 192. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on September 23, 2010, at which plaintiff appeared with her attorney and testified. A vocational expert, Gail Young, also appeared and testified. On January 11, 2011, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and

therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

At the time of the hearing, plaintiff was 36 years old with a high school education and two years of college. Plaintiff has past relevant work as a front desk worker, pizza shift manager, mailroom attendant, and gas attendant/cashier.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability.

At step two, the ALJ found that plaintiff had the following severe impairments: morbid obesity; asthma; diabetes mellitus; major depressive disorder, single episode; generalized anxiety disorder; panic disorder with agoraphobia; and a history of drug use. At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment. The ALJ assessed plaintiff with a residual functional capacity to perform light work, except that plaintiff can stand and walk for two hours per day, cannot climb other than stairs, and other postural movements are limited to being performed no more than occasionally; plaintiff must avoid concentrated exposure to environmental irritants; and plaintiff is limited to unskilled work with little public contact.

At step four, the ALJ found plaintiff is unable to perform her past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that claimant can perform. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ improperly assessed plaintiff's credibility; (2) the ALJ failed to properly evaluate and include

limitations described in the opinions of examining psychologist Daryl Birney, Ph.D., and plaintiff's treating mental health nurse practitioner Irene Holland, PMHNP; and (3) the ALJ improperly evaluated lay testimony from Glenda Coburn, plaintiff's friend.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039. "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Valentine, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Batson v. Commissioner Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

## I.   Plaintiff's Credibility

### A.   Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Carmickle v. Commissioner Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities,

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

### B.    Analysis

At the September 23, 2010 hearing, plaintiff testified that she last worked for Best Western as a front desk clerk and quit that job to take care of her mother. Plaintiff testified that she previously managed Pizza Huts. Plaintiff also stated that she never held a job for more than six months because she gets paranoid and angers easily.

Plaintiff described that she experiences pain in her feet that becomes worse with standing for longer than 30 minutes, and she takes Vicodin for pain. Plaintiff testified that she elevates her legs approximately 15 to 20 times per day to minimize edema, and that the length of time necessary varies depending on how long she has been standing. Plaintiff stated that she was diagnosed with diabetes in 2008, and that she takes metaformin to manage that condition. Plaintiff testified that she has pain in her left hip, experiences nausea every morning, and has asthma and allergies that cause wheezing and shortness of breath. Plaintiff also testified that she weighed 283 pounds, has lost 70 pounds in the previous year, and was scheduled for gastric bypass surgery.

Plaintiff testified that she takes an antidepressant (Zoloft) and a sleeping pill, and has been in counseling at Clatsop

Behavioral Health since 2009. Plaintiff further testified that she has depression, paranoia, anxiety, and PTSD that cause her fatigue, and she often cries and angers easily. Plaintiff described that she wants to hurt the children who tease her daughter.

Plaintiff testified that she thought she could stand for 30 minutes and can walk 50 feet. Plaintiff described that on good days, she can do laundry and the dishes, and on a bad days, she sleeps most of the day. Plaintiff testified that she has difficulty getting dressed because she cannot reach her feet, and that she does not shower on a daily basis.

In a November 25, 2008 Function Report, plaintiff stated that on most days, she sleeps until noon or 1 p.m., then showers and brushes her teeth. Plaintiff described that she prepares simple meals, rinses dishes and puts them in the dishwasher, vacuums, folds laundry, and irons. Plaintiff described that she can walk to the mailbox, but needs to rest afterward. Plaintiff described that she leaves the house once a month to buy groceries and uses a motorized shopping cart.

Plaintiff complains that the ALJ failed to cite clear and convincing evidence for discounting her credibility. Contrary to plaintiff's assertion, the ALJ provided three reasons, citing specific record evidence, that undermine her subjective complaints: (1) her poor work history; (2) her impairments are improving with

weight loss or are controlled with medication; and (3) her activities of daily living are inconsistent with total disability.

### 1.  poor work history

A poor work history is a legitimate basis upon which to discredit plaintiff. Thomas, 278 F.3d at 959 (upholding the ALJ's finding that claimant's poor work history "negatively reflected her credibility regarding her inability to work."). The ALJ detailed that plaintiff has had a marginal work history, even well before her alleged onset date. As the ALJ noted, and plaintiff's undisputed earnings reflect, plaintiff's employment prior to having two children did not satisfy the "gainful" employment level. Tr. 159. As the ALJ correctly reported, plaintiff's income after her children were born ranged from approximately $5,000 to $10,000 a year. Based on plaintiff's uncontradicted past earnings reports, the ALJ could infer that plaintiff's sparse work history before her alleged onset of disability undermined her testimony that her inability to work in any capacity after her alleged onset date was due to disability. Therefore, plaintiff's employment history before the alleged onset of disability is substantial evidence supporting the ALJ's adverse credibility finding. Thomas, 278 F.3d at 959.

In her reply, plaintiff contends that the her poor work history is a product of her mental impairments. Additionally, plaintiff argues that she was truthful about why she left the motel

desk clerk job, and that the ALJ should not have discounted her credibility on that basis.  I disagree.

To be sure, as the ALJ indicated, plaintiff testified that she left work as a desk clerk to take care of her mother, and that she became disabled at a later date.  Plaintiff also testified that she could not stay in any job for more than six months due to paranoia. The ALJ specifically found that plaintiff did not stop working because of her disability, noting that plaintiff instead testified that she became disabled at a later time, without identifying a particular triggering event.  Based on plaintiff's inconsistent explanations, the ALJ could conclude that plaintiff's spotty work history was not the result of her alleged disability.  The ALJ's interpretation of the evidence is a rational one and is supported by substantial evidence in the record.  Thus, based on my careful review of the record as a whole, I conclude that even if the evidence also could support the conclusion now advanced by plaintiff, the ALJ's conclusion is a rational one and must be sustained.  Batson, 359 F.3d at 1193.

### 2.    improvement with weight loss and impairments controlled by medication

The ALJ discounted plaintiff's credibility because the severity of her complaints was not supported by the medical evidence.  The ALJ discussed that plaintiff, who is morbidly obese, has lost weight and that her physical limitations were improving as a result.  Indeed, at the time of the hearing, plaintiff reported

having lost 70 pounds.  The ALJ noted that plaintiff was approved for gastric bypass surgery, and that her diabetes has been consistently controlled with medication.  The ALJ thoroughly discussed plaintiff's medical records which showed that her asthma and COPD were mild and without complications.  The ALJ's findings are wholly supported by substantial evidence in record and provide clear and convincing support for the adverse credibility determination.  Chaudry v. Astrue, 688 F.3d 661, 672 (9th Cir. 2012).

Plaintiff now complains that it is her poor mental health that is her most limiting impairment, which she contends has not improved with weight loss.  As the ALJ correctly indicated, plaintiff's GAF scores[1] increased from 45 to 58 when her weight dropped from 355 to 302 pounds in July 2010.  Compare Tr. 516, 536, 543, with Tr. 355 & 466.  Treatment notes from plaintiff's mental health providers indicate that plaintiff has body image issues that feed into her depression, and that after losing weight she was "doing better."  Tr. 518, 521, 523.  A July 2010 treatment note from a group therapy session showed plaintiff reporting significant

---

[1]A GAF score of 41-50 indicates that the patient has "[s]erious symptoms ( e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning ( e.g., no friends, unable to keep a job)." DSM-IV-TR, p. 34.  A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id.

improvement.    Tr. 541.    The ALJ's findings are supported by substantial evidence, and the ALJ could reasonably infer that her mental health was improving with weight loss and medication.

Moreover, in the decision, the ALJ discussed that plaintiff has a history of depression and anxiety for which she has intermittently taken antidepressants.    Additionally, the ALJ indicated that plaintiff also took Vicodin to control pain and Zoloft and trazadone to control her psychological impairments.    The ALJ thoroughly discussed plaintiff's medical records from her mental health practitioners and the ALJ's findings are supported by substantial evidence.    I conclude the ALJ could discredit plaintiff on the basis that her psychological symptoms were controlled with medication and were not indicative of total disability.    Turner v. Commissioner of Soc. Sec. Admin., 613 F.3d 1217, 1225 (9th Cir. 2010).    I find that the ALJ provided clear and convincing reasons to reject plaintiff's subjective testimony regarding the extent of her limitations.

### 3.    activities of daily living

The ALJ also discounted plaintiff's credibility based on the fact that her alleged impairments have not interfered with her ability to perform most activities of daily living.    Where a claimant is able to perform everyday activities indicating capacities that are transferrable to a work setting, an ALJ may discredit a claimant on that basis.    Molina v. Astrue, 674 F.3d

1104, 1113 (9th Cir. 2012). And, an ALJ may discredit a claimant who may have some difficulty functioning to the extent that those activities contradict a claim of total disability. Id.; Turner, 613 F.3d at 1225. As the ALJ detailed, plaintiff lives independently, cares for two teenage children, makes dinner, drives, shops, does laundry, irons, vacuums, and has only minor difficulty with self-care. The ALJ also noted that plaintiff described a long list of activities that she enjoys doing, such as reading, listening to music, and doing artwork. The ALJ also acknowledged that these activities are not necessarily incompatible with a disability, but rather "they indicated that [plaintiff's] symptoms may have been overstated."

The ALJ's findings are supported by substantial evidence in the record. The ALJ did identify specific evidence in the record that undermines plaintiff's claims that her impairments were so great that she was unable to work. This is a specific reason that when combined with the other reasons, amount to clear and convincing support for the ALJ's adverse credibility determination.

## II.  **The ALJ's Evaluation of the Medical Evidence**

Plaintiff does not challenge the ALJ's findings regarding her physical abilities, but contends that the ALJ erred by failing to include all the mental limitations identified by examining psychologist Daryl Birney, Ph.D. and nurse practitioner Irene Holland, PMHNP, into the RFC.

13 - OPINION AND ORDER

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011).

When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. Id. In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); Batson, 359 F.3d at 1195.

**B.  Dr. Birney**

On November 23, 2010, Dr. Birney conducted a psychodiagnostic evaluation of plaintiff on behalf of Disability Determination Services. Dr. Birney's examination also included the Minnesota Multiphasic Personality Inventory-2 (MMPI-2), which yielded an invalid profile. Dr. Birney stated that plaintiff reported experiencing depression her entire life, and made two suicide attempts as a teenager. Dr. Birney noted that plaintiff reports retaliatory thoughts and some of them are homicidal. Dr. Birney

opined that plaintiff was of average intellect, suffers angry outbursts and has a history of gambling problems.

As the ALJ discussed, Dr. Birney noted that plaintiff's MMPI-2 was invalid due to her endorsement of an excessive number of F scale items which indicates she is "exaggerating pathology in a 'cry for help' or in attempt to 'fake bad.'" Tr. 581. Dr. Birney found that plaintiff had no limitations understanding and carrying out simple instructions, and moderate limitations in understanding and carrying out complex instructions or making complex work-related judgments. Id. at 582. As the ALJ discussed, Dr. Birney opined that plaintiff would have moderate limitations in interacting appropriately with the public, supervisors, and co-workers, and in responding appropriately to changes in a routine work setting. Tr. 583.

Dr. Birney diagnosed plaintiff with major depressive disorder, generalized anxiety disorder, and panic disorder, and assigned a GAF of 50. The ALJ gave Dr. Birney's opinion significant weight, and the ALJ included in the RFC that plaintiff be limited to unskilled work and have limited contact with the public. However, the ALJ omitted any limitations with respect to plaintiff's contact with supervisors and co-workers into the RFC. Plaintiff contends that the omission of these additional limitations from the RFC was error.

The RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a).  In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ must also evaluate "all of the relevant medical and other evidence." Id.  An ALJ's RFC need only incorporate limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008); Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Based on the evidence in the record of this case, I agree that the ALJ has erred.  Here, the ALJ afforded significant weight to Dr. Birney's opinion, and specifically indicated that his limitations would be credited.  However, the ALJ failed to incorporate the limitations with respect to co-workers or supervisors into the RFC or provide specific and legitimate reasons for discounting those limitations, such as the invalid MMPI-2 profile or adverse credibility determination.  Accordingly, I conclude that the ALJ has erred.

## C.    Irene Holland, PMHNP

Under the social security regulations governing the weight to be accorded to medical opinions, "acceptable medical sources" include licensed physicians and licensed psychologists, but not nurse practitioners. See 20 C.F.R. § 416.913(a), (d)(1).  Nurse

practitioners are deemed to be "other sources." Id. "Other"
medical sources may not establish the existence of a medically
determinable impairment, but, the information from other sources
may provide insight into the severity of a claimant's impairments
and ability to work, especially where the evidence is complete and
detailed. See SSR 06-03p, available at 2006 WL 2329939, *4-5.
Because Ms. Holland was an "other source" under the regulations,
the ALJ was required to provide a germane reason for discounting
Ms. Holland's opinion. See, e.g., Bruce v. Astrue, 557 F.3d 1113,
1115-16 (9th Cir. 2009)(explaining standard for lay witness
testimony); Turner, 613 F.3d at 1223-24.

     Plaintiff began mental health treatment with Clatsop
Behavioral Healthcare in March of 2009, and was treated by Ms.
Holland from January to August of 2010. On September 9, 2010, Ms.
Holland completed a Mental Medical Source Statement. Tr. 566. Ms.
Holland diagnosed plaintiff with major depressive disorder,
recurrent, severe without psychotic features; generalized anxiety
disorder; PTSD; mood disorder not otherwise specified; panic
disorder with agoraphobia; alcohol abuse; and gambling addiction,
and assigned a GAF of 58. As the ALJ correctly indicated, on a
checklist of mental abilities, Ms. Holland indicated that plaintiff
was "seriously limited, but not precluded" in her ability to get
along with coworkers and peers and responding appropriately to
changes in a workplace setting. Tr. 28, 569. The ALJ also

concluded that Ms. Holland described that plaintiff would find it stressful working with others, and dealing with the public and supervisors. Tr. 28, 570. Ms. Holland also indicated that due to her mental impairments, plaintiff would be absent from work four days per month. Tr. 571.

The ALJ discussed that Ms. Holland was not an acceptable medical source, but due to her ongoing relationship with plaintiff, gave her opinion "some weight," and credited and incorporated Ms. Holland's opinion concerning plaintiff's "social interactions" and limitations to simple instructions into the RFC. The ALJ also noted that Ms. Holland's opinion was consistent with Dr. Birney's opinion.

Plaintiff argues that the ALJ was required to include the all the limitations described by Ms. Holland into the RFC, and that the ALJ's failure to provide clear and convincing reasons to reject Ms. Holland's opinion that plaintiff would be absent four days each month was error.

I conclude that the ALJ erred in the analysis of Ms. Holland's opinion. A comparison of Dr. Birney's examination and Ms. Holland's Medical Source Statement reveal that their diagnoses are consistent, as are their descriptions of plaintiff's limitations regarding working with the public, co-workers, and supervisors. Thus, the ALJ should have included plaintiff's limitations with respect to co-workers and supervisors into the RFC, or should have

provided germane reasons for discounting those limitations described by Ms. Holland. <u>Bray</u>, 554 F.3d at 1115-16.

### III. <u>Lay Testimony</u>

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. <u>See</u> <u>Bruce</u>, 557 F.3d at 1115; <u>Stout v. Commissioner, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1053 (9th Cir. 2006); <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. <u>Valentine</u>, 574 F.3d at 694.

Plaintiff's friend, Glenda Coburn, provided a Third Party Function Report dated November 19, 2008, in which she stated that she has known plaintiff for six years, and that plaintiff drives, shops once a month, cooks, and is capable of self care. Ms. Coburn stated that plaintiff is able to care for her two teenage children and that plaintiff leaves the house primarily to grocery shop or attend appointments. Ms. Coburn described that plaintiff is primarily limited because she cannot stand, walk or sit for very long due to pain, swelling, and difficulty breathing. Tr. 208-212.

The ALJ thoroughly discussed the information provided by Ms. Coburn in the decision and concluded that Ms. Coburn's lay testimony largely echoed plaintiff's complaints, and was based on plaintiff's subjective symptoms. The ALJ findings are wholly

supported by substantial evidence in the record.    In light of my
conclusion that the ALJ provided clear and convincing reasons to
discredit plaintiff, it follows that the ALJ has provided germane
reasons for rejecting the testimony of Ms. Coburn.    Valentine, 574
F.3d at 694.

**IV.   RFC and Vocational Testimony**

Because I have identified an error in the ALJ's evaluation of
the medical evidence that may impact the RFC, the ALJ could not
rely upon the VE's testimony.    Gallant v. Heckler, 753 F.2d 1450,
1456 (9th Cir. 1984).

**V.    Remand**

The decision whether to remand for further proceedings or for
immediate payment of benefits is within the discretion of the
court.    Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).    The
issue turns on the utility of further proceedings.    A remand for
further proceedings is appropriate where there are outstanding
issues that must be resolved before a disability determination can
be made, and it is not clear from the record that the ALJ would be
required to find the claimant disabled if all the evidence were
properly evaluated.    Taylor, 659 F.3d at 1235; Luna v. Astrue, 623
F.3d 1032, 1035 (9th Cir. 2010).

Under the "crediting as true" doctrine, evidence should be
credited and an immediate award of benefits directed where (1) the
ALJ failed to provide legally sufficient reasons for rejecting the

evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Strauss v. Commissioner of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003)(citing Bunnell v. Sullivan, 947 F.2d 341, 348 (9th Cir. 1991)).

Plaintiff contends that this court must credit as true Ms. Holland's opinion that plaintiff would be absent four days of work each month. Plaintiff submits that testimony from the VE makes clear that when such evidence is credited, she is disabled. I disagree.

As discussed above, the ALJ erred in evaluating the medical evidence from Dr. Birney and Ms. Holland in failing to include the limitations in working with co-workers and supervisors in the RFC or in providing sufficient reasons for discounting those portions of their opinions. However, Ms. Holland's opinion that plaintiff would miss four days of work each month is contradicted by Dr. Birney's opinion, who did not indicate that plaintiff would miss any work days as a result of her impairments. Moreover, the ALJ

gave Dr. Birney's opinion "significant weight," and Ms. Holland's opinion only "some weight."  Indeed, the ALJ only credited those portions of Ms. Holland's opinion concerning plaintiff's "social interactions" and simple instructions.  See Arnold v. Astrue, 2012 WL 6025744, *4 (D. Or. Dec. 4, 2012)(noting that were an ALJ does not give an opinion controlling weight, the RFC need not mirror those restrictions).  Giving plaintiff the benefit of the doubt, there is a conflict in the medical testimony that must be resolved by the ALJ with respect to the days plaintiff may be absent from work.  "'When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.'"  Thomas, 278 F.3d at 956-57 (quoting Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1991)).  Because outstanding issues remain that must be resolved, I decline to credit Ms. Holland's opinion as true.

Furthermore, additional outstanding issues remain with respect to the RFC.  Even if I were to credit the evidence that plaintiff has limitations in her ability to interact with co-workers and supervisors, there is insufficient vocational evidence in the record to determine whether jobs exist in the national economy that plaintniff can perform.  Because outstanding issues must be resolved before a disability determination can be made, this action must be remanded for further proceedings.  Luna, 623 F.3d at 1035; Vasquez, 572 F.3d at 593.

Accordingly, this action is remanded for further administrative proceedings including re-evaluation of the opinions of Dr. Birney and Ms. Holland and resolution of their conflicting opinions, a revised RFC if necessary, and new determination at step five.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _21_ day of FEBRUARY, 2014.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge